```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


William C. Morris,              :

      Plaintiff,                :

  v.                            :    Case No. 2:16-cv-132

                                :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,     Magistrate Judge Kemp

      Defendant.                :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, William C. Morris, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on October 19, 2012, and alleged that Plaintiff became disabled on January 1, 2009.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on August 8, 2014.  In a decision dated September 26, 2014, the ALJ denied benefits.  That became the final decision of the Commissioner when the Appeals Council denied review on December 21, 2015.

After Plaintiff filed this case, the Commissioner filed the administrative record on April 22, 2016.  Plaintiff filed a statement of specific errors on June 6, 2016, to which the Commissioner responded on August 12, 2016.  Plaintiff has not filed a reply brief, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearings

Plaintiff, who was 52 years old as of the date of the administrative hearing and who has a seventh grade education, testified as follows.  His testimony appears at pages 35-54 of

the administrative record.

Plaintiff was first asked what caused him to be disabled as of January 1, 2009. He said his diabetes was the reason. It had gotten worse and he was light-headed and dizzy every day due to fluctuations in his blood sugar. In turn, those symptoms caused him to be forgetful. He had done some part-time work after that date through temporary employment services.

Plaintiff saw his doctor once a month. He was being treated for diabetes, high blood pressure, high cholesterol, and a mood disorder. He was under the care of a different doctor for the last of these conditions and was taking medications to control his mood swings.

In terms of daily activities, Plaintiff said he could walk but was unable to participate in any sports or hobbies. He visited with friends and attended car races or baseball and football games. He did not think he could work due to constant depression, agitation when around people, and the effects of his diabetes. He also identified problems with his back that made it hard to walk or stand for more than fifteen or twenty minutes. Finally, he said that he was tired all of the time due to sleep apnea.

### III. The Medical Records

The pertinent medical records are found beginning at page 277 of the record and can be summarized as follows. Because Plaintiff does not contend that the content of records relating to his physical impairments are pertinent to his statements of error and does not summarize those records in his memorandum, the Court will not include them in this summary.

Dr. Tanley, a neuropsychologist, conducted a consultative evaluation on December 21, 2012. Plaintiff described his chief complaint as neuropathy and said he had no money to purchase insulin. He said he had stopped working six months before after

spending a week as a cook at a Kentucky Fried Chicken restaurant. He had never been treated by a mental health professional. His speech and content were within normal limits, his affect was appropriate to thought, and his eye contact was good. There were no signs of anxiety. Dr. Tanley observed that Plaintiff's level of intellectual functioning appeared to be in the mentally retarded range but a diagnosis would require review of school records. The diagnoses included an adjustment disorder with depressed mood, and Plaintiff's GAF was rated at 60. Dr. Tanley said that Plaintiff could function in a work setting "in the MR range" and would be expected to have difficulty with either complex or multistep tasks. Plaintiff reported no problems getting along with others, but Dr. Tanley thought that his depression might affect that relationship in a work setting. Finally, his depression would also affect "to some degree" Plaintiff's ability to deal with work stress. (Tr. 302-06).

On October 16, 2013, Helen Harvey, who had started providing counseling services to Plaintiff two months before, filled out a mental residual functional capacity questionnaire. She indicated a number of either moderate or marked limitations in work-related areas, most significantly in the areas of working around others, working independently, maintaining attention and concentration for more than brief periods of time, performing at an acceptable level, remembering basic workplace information, and dealing with work stress. Ms. Harvey also said that Plaintiff would likely miss five or more days of work per months and that his condition would deteriorate under work stress. She noted that Plaintiff "has had little success in retaining jobs in the past." (Tr. 349-51). The record also contains a number of Ms. Harvey's counseling session notes, one of which indicated that Plaintiff was to be seen by Dr. Shiflett. That doctor filled out a form on February 24, 2014, indicating that Plaintiff was either markedly

or extremely impaired in almost all areas of work-related functioning. (Tr. 421-23). The administrative record does not appear to contain any treatment notes from Dr. Shiflett.

There are also opinions about Plaintiff's mental residual functional capacity from state agency reviewers. The first, Dr. Umana, concluded that Plaintiff was markedly limited in his ability to deal with complex instructions but otherwise had only a few moderate limitations. He was viewed as being able to maintain sufficient attention and concentration to complete simple tasks. (Tr. 91-92). Dr. Johnston, the second reviewer, added, in her evaluation, the observation that Plaintiff could adapt to settings where changes were infrequent and were clearly explained. (Tr. 107-08).

### IV. The Vocational Testimony

Eric Pruitt was called to testify as a vocational expert at the second administrative hearing. His testimony begins at page 54 of the administrative record.

Mr. Pruitt first asked Plaintiff some questions about his past work. Plaintiff said that his last job was trimming around road signs with a utility knife, and he testified about other jobs as well. Mr. Pruitt then characterized Plaintiff's past work as a material handler, which was semi-skilled and heavy; a hand trimmer, which is light and unskilled; a courier, which was also light and unskilled; a production assembler, which was the same; and a conveyor feeder, which was unskilled and medium.

Next, Mr. Pruitt was asked questions about someone with Plaintiff's background who could work at the medium exertional level and who could perform goal-based production/work measured by end result, not pace work, and which was limited to simple, routine, repetitive tasks done in a low-stress environment, defined as involving only occasional changes in the work setting and occasional interaction with coworkers, supervisors, and the

public.  Mr. Pruitt said that someone with those restrictions could do Plaintiff's past job as a hand trimmer, and could also work as a floor technician, laundry worker I, or mill operator helper.  The hand trimmer job would be available even if Plaintiff were limited to light work, as would positions like label coder, laundry press operator, and buffing machine tender.  At the sedentary level, someone with those restrictions could be a film touch up inspector, laminator I, gauger, or printed circuit board inspector.

Lastly, Mr. Pruitt was asked if any jobs would be available to someone who had to work in isolation, with only ten percent of time or less spent in contact with a supervisor.  He said that there were no sedentary, light, or medium unskilled jobs fitting that description.  He also testified that the jobs he identified could accommodate frequent supervision initially, but not on an ongoing basis, and that being off task 10 to 20 percent of the time was also inconsistent with being employed in an unskilled job.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision which is under review in this case appears at pages 14-25 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015.  Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, diabetes mellitus type II, hypertension, and affective disorders.  The ALJ also found that these impairments did not, at any time, meet or

equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level.  From a mental standpoint, he could perform goal-based production/work measured by end result, not pace work, which was limited to simple, routine, repetitive tasks done in a low-stress environment, defined as involving only occasional changes in the work setting and occasional interaction with coworkers, supervisors, and the public.  The ALJ next found that, with these restrictions, Plaintiff could perform his past relevant work as a had trimmer.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly follow the "treating physician" rule in his rejection of Dr. Shiflett's opinion; (2) the ALJ did not correctly follow Social Security Ruling 06-3p in his evaluation of Ms. Harvey's opinion; and (3) the mental residual functional capacity finding was not supported by substantial evidence.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th

Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

      A.   The Treating Source Opinion

Because the first issue which Plaintiff raises questions the sufficiency of the reasons given by the ALJ for discounting Dr. Shiflett's opinion, the Court will set out the ALJ's rationale in some detail. Here is what the ALJ had to say about that opinion.

The ALJ began by noting that Plaintiff had been diagnosed with adjustment disorder with depressed mood and bipolar mood disorder. Next, citing to Dr. Tanley's report, the ALJ noted that Plaintiff said his mood was better and he had more energy after having been prescribed medication. He then assigned "some weight" to the state agency reviewers' opinions because "there is evidence that the claimant would have social and stress-related limitations as discussed in Dr. Tanley's assessment." (Tr. 21). Reviewing Dr. Tanley's report in more detail, the ALJ gave it "great weight" because Dr. Tanley had the chance to examine Plaintiff and his views were "consistent with the medical evidence of record." Id.

After discussing Ms. Harvey's opinion and giving it little weight, the ALJ turned to Dr. Shiflett's opinion.  This, too, was accorded "little weight" for what the ALJ described as "a number of reasons" - including that it was "inconsistent with the medical evidence of record," namely treatment notes, the fact that it purported to assess Plaintiff's condition as of January 1, 2009, but no mention of depression appears in the medical records until December 12, 2012, Plaintiff's assertion that he did not become disabled until August, 2012, his statements to Dr. Tanley about how well he related to others, the fact that he told other providers that his disability was based on diabetes, and the fact that he never reported issues with his supervisors when he was working.  (Tr. 22).

In his statement of errors, Plaintiff makes two separate arguments about why this treatment of Dr. Shiflett's opinion justifies a remand.  First, he argues that the ALJ articulated and relied upon an incorrect legal standard.  Second, he asserts that the ALJ's statement of reasons was either not specific enough or is not supported by the record.  The Court will address each of these contentions in turn.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective

medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

In support of his first argument, Plaintiff points out that the ALJ did not lay out the guiding principles which the Court has just articulated, did not mention the concept that under certain circumstances a treating source opinion is to be given "controlling weight," and simply stated, in conclusory fashion, that the opinion was entitled to only "little weight." In response, the Commissioner argues that the ALJ's analytical method tracked both the applicable regulation and the requirements of cases such as Gayheart v. Comm'r of Social Security, 710 F.3d 365 (6th Cir. 2013).

The regulation at issue, 20 C.F.R. §404.1527(c), states that treating source opinions are evaluated using a variety of factors, including the presence of a treating or examining relationship, the length of any treating relationship, the frequency of examination, the supportability of the opinion by medical evidence in the record, its consistency with other evidence, the specialization of the source, and other pertinent considerations. Section 404.1527(c)(2) says that "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case

record, we will give it controlling weight." Gayheart interpreted this part of the regulation to require that an ALJ first determine whether to give a treating physician's opinion controlling weight, based on the supportability and consistency of the opinion, and held that the ALJ may apply the remainder of the regulatory factors "only after the ALJ has determined that a treating-source opinion will not be given controlling weight." Id. at 376.  The failure to follow that sequence of decision-making and to explain why the treating source opinion is not entitled to controlling weight "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." Id. at 377.  However, as the court observed in Aiello-Zak v. Comm'r of Social Security, 47 F.Supp.3d 550, 558 (N.D. Ohio 2014), "recent authority has held that so long as an ALJ adequately addresses the factors required by Gayheart and articulates good reasons for discounting the opinion of a treating source, the Commissioner's decision will not be upset by a failure to strictly follow the Gayheart template" (citing Dyer v. Social Security Administration, 568 Fed.Appx. 422, 425-26 (6th Cir. June 11, 2014)). See also Halama v. Comm'r of Social Security, 2013 WL 2013 WL 4784966, *7 (N.D. Ohio Sept. 5, 2013)(failure to follow exactly the Gayheart sequence of findings can be excused if the ALJ addresses "on the record each of the Gayheart elements so as to permit meaningful judicial review of the final decision").

Here, the ALJ did collapse the inquiry into a single discussion of the weight to be given to Dr. Shiflett's opinion, exactly what Gayheart cautioned against.  In the paragraph discussing that opinion, the ALJ did not mention the concept of "controlling weight," nor did he directly explain why crediting Dr. Shiflett's opinion to that extent was not justified based upon the two criteria listed in §404.1527(c)(2).  Nevertheless, the ALJ earlier cited to that regulation (Tr. 19) and to the

-10-

corresponding Social Security Regulation (SSR 96-2p), undercutting Plaintiff's argument that the ALJ used an incorrect legal standard in evaluating the treating source opinion. Further, the Court can meaningfully review the ALJ's decision not to give controlling weight to Dr. Shiflett's opinion because the ALJ explicitly addressed the lack of support for that opinion in the treatment notes and its inconsistency with other evidence in the case, which are the appropriate factors.  Consequently, while it would have been better for the ALJ to have followed the analytical path set forth in Gayheart, the Court does not find that this failure, standing alone, would support a remand.

Plaintiff's second contention is that the ALJ did not provide good and well-supported reasons for giving only little weight to Dr. Shiflett's opinion.  He argues that the inconsistencies which the ALJ cited were between Plaintiff's self-reports of symptoms and what Dr. Shiflett concluded, and not in the medical evidence itself; that although the ALJ might have properly discounted Dr. Shiflett's opinion about Plaintiff's condition before the treatment relationship began, he should not have done so afterward; that the ALJ should not have relied on statements which Plaintiff made to other doctors about the basis for his disability; and that the ALJ's critique of the form used by Dr. Shiflett was misplaced.  The Commissioner, in turn, says that the record fully supported the reasons given by the ALJ for his assessment of Dr. Shiflett's opinion.

It is true that much of the inconsistency noted by the ALJ between what are, undeniably, extreme limitations imposed by Dr. Shiflett on Plaintiff's ability to function in the workplace, and other portions of the record, comes from Plaintiff's own statements.  Some of them were not made in the context of seeking either physical or psychiatric treatment; others were.  However, given the fact that Dr. Shiflett did not state, on the form he completed, what the basis was for his opinion, and also given the

fact that here (as in many cases) the opinions about mental limitations are derived substantially from Plaintiff's own self-reports, the Court sees no reason why the ALJ could not place some weight on the fact that Plaintiff's own description of his abilities and problems conflicts with Dr. Shiflett's more pessimistic views of what he could do.  Cf. Sturgeon v. Comm'r of Social Security, 2013 WL 6632635, *14 (S.D. Ohio Dec. 17, 2013).

As to the date on which Dr. Shiflett said Plaintiff became disabled, as the Court reads it, the ALJ found the opinion somewhat suspect because it purported to express an opinion about Plaintiff's condition several years before Dr. Shiflett ever saw him.  That is a valid reason to question the opinion in its entirety.  The ALJ also commented about the categories on the form, but the Court sees little relationship between those comments of the ALJ and his reasons for discounting Dr. Shiflett's opinion.  In short, the ALJ's reasoning was sufficiently specific to permit the Court to review it, and it cited reasons which find support in the record.  Therefore, the first statement of error should be overruled.

### B.  SSR 06-3p

Plaintiff next takes issue with the ALJ's weighing of Ms. Harvey's opinion.  Ms. Harvey is not a "medical source" as defined in the regulations, but the ALJ was still required to evaluate her opinion.  The standard for doing so is set out in SSR 06-3p.  As this Court has previously explained,

> SSR 06-3p states that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning...." This does not create an independent regulatory duty to articulate the ALJ's reasoning in the same way required for an opinion rendered by a treating source. See, e.g., Robinson v. Comm'r of Social Security, 2012 WL 194966, *12 (N.D. Ohio Jan. 20, 2012) ("there is no

>controlling precedent requiring an ALJ to explicitly address written statements such as" a function report from a case manager). Rather, all that is needed is a sufficient discussion of all of the evidence of record to demonstrate that the ALJ considered the key factors of " 'supportability and consistency' " in deciding how much to credit these types of reports. See Action v. Comm'r of Social Security, 2013 WL 3761126, *5 (S.D. Ohio July 16, 2013), quoting Kerlin v. Astrue, 2010 WL 3937423, *8 (S.D.Ohio March 25, 2010), adopted and affirmed 2010 WL 3895175 (S.D. Ohio Sept. 29, 2010).

Swartz v. Comm'r of Social Security, 2014 WL 868127, *8 (S.D. Ohio March 5, 2014), adopted and affirmed 2014 WL 1343094 (S.D. Ohio Apr. 3, 2014).

Here, the ALJ explained that he gave little weight to Ms. Harvey's conclusions about Plaintiff's mental limitations because it was (like Dr. Shiflett's) "inconsistent with the medical evidence of record" and "too restrictive...." (Tr. 22). The ALJ also noted that Ms. Harvey had been seeing Plaintiff for only two months when she expressed her opinion and that she was not an "acceptable medical source." Id. Plaintiff argues that the ALJ used the short duration of the treatment relationship as a negative instead of a positive factor and otherwise misapplied the legal standard set out in SSR 06-3p.

The Court agrees with the Commissioner that the ALJ's treatment of Ms. Harvey's opinion was adequate to satisfy his duty under SSR 06-3p. The length of the treating relationship is a factor, and there is no reason why a short period of treatment, as opposed to a longer one, cannot justify giving less weight to an opinion from a non-medical source. Further, it appears from the record that Plaintiff himself never expressed a problem getting along with others in the workplace or, indeed, any psychological issues interfering with his ability to work, and the treatment notes from his few visits with Ms. Harvey do not contain evidence of this restriction or other severe

-13-

psychological limitations.  There was evidence from medical sources - in particular, Dr. Tanley, whose opinion was given great weight by the ALJ - which contradicted Ms. Harvey's findings.  Given her status, and given the ALJ's use of various appropriate factors to discount her opinion, the Court finds no merit in Plaintiff's second assignment of error.

       C.   <u>The Mental Residual Functional Capacity Finding</u>

Plaintiff's final assignment of error is, in essence, an invitation to the Court to reweigh the ALJ's assessment of Dr. Tanley's conclusions.  Plaintiff contends that there is some ambiguity in the way Dr. Tanley expressed the limitations he found, and that they are not necessarily inconsistent with a finding of disability.  The Commissioner notes that Dr. Tanley's report was itself reviewed by the state agency psychologists and that they, like the ALJ, determined that it could reasonably be read as supporting a finding that Plaintiff had the mental capacity to perform at least a limited range of work so long as accommodations were made to the moderate impairments he suffered from.

Where evidence in the record is susceptible of different reasonable interpretations, it is not the Court's job, when performing a "substantial evidence" review, to substitute its judgment for that of the ALJ.  An ALJ has a "zone of choice" when interpreting the record, and so long as the ALJ makes a choice which finds reasonable support in that record, that choice is insulated from judicial reversal.  <u>See generally Ritterbeck v. Comm'r of Social Security</u>, 2012 WL 6594828 (S.D. Ohio Dec. 18, 2012), <u>adopted and affirmed</u> 2013 WL 796069 (S.D. Ohio March 4, 2013).  Perhaps Plaintiff's reading of Dr. Tanley's report is a reasonable one, but that does not mean it is the only reasonable way for it to be understood.  The Court finds that, particularly taking into account the state agency reviewers' opinions, the ALJ had a reasonable basis for finding that Dr. Tanley's conclusions

-14-

were consistent with the ability to perform basic work-related functions.  Nothing more is needed to sustain the ALJ's decision on this issue.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge